IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

AVX CORPORATION,                          )
                                          )
          Plaintiff,                      )
                                          )
vs.                                       )          Civil Action No.: 4:07-3299
                                          )
HORRY LAND COMPANY, INC. and              )
THE UNITED STATES OF AMERICA,             )
                                          )
          Defendant.                      )
_____ )

## ORDER

The plaintiff, AVX Corporation ("AVX") filed this action on October 2, 2007 against Horry

Land Company, Inc. ("Horry Land"). (Doc. # 1). AVX filed its amended complaint on April 3, 2009,

which added the United States of America as a defendant. (Doc. # 65). On April 13, 2009, Horry

Land filed its Answer with the inclusion of five counterclaims. (Doc. # 72). On May 27, 2009, AVX

filed a Motion for Summary Judgment to dismiss all counterclaims alleged by the defendant Horry

Land. (Doc. # 81). On July 13, 2009, Horry Land filed its Response in Opposition to Plaintiff's

Motion for Summary Judgment. (Doc. # 95). Plaintiff AVX filed its Reply to Horry Land's Response

on August 18, 2009. (Doc. # 103). This Court held a hearing on the matter on January 5, 2010.[1]

(Doc. # 123). The Court has carefully considered the motions, memoranda, and exhibits submitted

by the parties, as well as the arguments presented at the hearing. The Court has determined the

_____

[1]The defendant United States of America gave this Court notice of its intention not to be
present at the hearing.

relevant facts from the record presented by the parties, and drawn all reasonable factual inferences in favor of the non-moving party.

## FACTS

The matter before the Court concerns only the counterclaims brought by Horry Land against AVX. Therefore, the factual summary herein reflects only those facts relevant to the adjudication of the Motion for Summary Judgment.

At the heart of this suit is the allegation by Horry Land that its real estate has diminished in value as a result of contamination caused by AVX. Horry Land is a company operating primarily in the Myrtle Beach area. It owns a tract of land approximately 30 acres in size, located across 17th Avenue South from property owned by AVX. AVX is a manufacturer and supplier of electronic components, including the production of ceramic capacitors. The company's principal executive offices as well as a manufacturing facility are located at 17th Avenue South, Myrtle Beach, South Carolina. As a part of its manufacturing process, AVX previously employed the use of volatile organic compounds ("VOCs") including trichloroethene ("TCE"). Additionally, AVX previously stored TCE in storage tanks on its property in Myrtle Beach. Some time thereafter, AVX underwent remediation efforts which included soil excavation at the Myrtle Beach facility.

Horry Land previously leased a portion of its property to AVX. While under lease, AVX used Horry Land's property to temporarily store soils on an area of the property that served as the employee parking lot. Horry Land asserts that sometime in 2006, after the expiration of the lease, it ordered a Phase I environmental study for the property. It further alleges that, because of what was uncovered from the Phase I study, Horry Land ordered a limited Phase II environmental study for the portion of its property located closest to the AVX facility. Horry Land states that ground water

samples revealed TCE concentrations as high as 1,010 parts per billion, greatly in excess of the maximum containment level of five parts per billion.

In the summer of 2007, Horry Land had an appraiser assess the value of Horry Land's property. The appraiser concluded that the loss of value to the property based upon its contaminated state was approximately $5,375,000, or the entire value of the property. Horry Land notes that this loss only refers to the contaminated portion of the property, which is approximately two-thirds of the property in its entirety.

Subsequently, Horry Land made a demand through counsel that AVX pay for the damage to its real estate resulting from its contamination. The demand was refused. In the case at hand, Horry Land has alleged five causes of action as counterclaims in its Answer: negligence, negligence per se, strict liability, nuisance, and trespass. Horry Land also seeks punitive damages.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the counter-defendant AVX bears the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires the counter-defendant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it

believes demonstrate the absence of genuine issues of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>see also</u> <u>Anderson</u>, 477 U.S. at 249.

Though the counter-defendant bears this initial responsibility, the counter-claimant, as nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); <u>see</u> <u>Celotex</u>, 477 U.S. at 317. In satisfying this burden, the counter-claimant must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, <u>Anderson</u>, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, the counter-claimant must produce evidence on which a jury could reasonably find in its favor. <u>See</u> <u>Anderson</u>, 477 U.S. at 252.

In considering the counter-defendant AVX's motion for summary judgment, this Court construes all facts and reasonable inferences in a light most favorable to the counter-claimant Horry Land as the nonmoving party. <u>See</u> <u>Miltier v. Beorn</u>, 869 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587 (1986) (internal quotations omitted).

## <u>DISCUSSION</u>

AVX asserts that it is entitled to summary judgment first based upon its allegation that "essential to any claim is the fact of damage and Horry Land cannot show cognizable damages." (Pl. Mot. Summ. J. at p. 1). AVX also attacks each cause of action independently, asserting that some element is lacking from each claim.

**I.      Damages**

AVX asserts that summary judgment should be granted because Horry Land has failed to produce evidence of recoverable damages as to any of its claims. AVX first alleges that Horry Land's property can be cleaned up in a fixed period of time, and therefore any damages are temporary in nature. AVX next asserts that when injury to property is temporary, the appropriate measure of damages is the loss of use and not diminution in property value. See Gray v. Southern Facilities, Inc., 183 S.E.2d 438, 443 (S.C. 1971). AVX asserts that Horry Land has not lost any rental income, will not lose any revenue in the future, and has not made any attempts to sell the property in question. It also asserts that any attempt by Horry Land to put a dollar figure on their loss would be mere speculation. Therefore, assessing potential damages under a "loss of use" theory, AVX concludes that Horry Land has suffered no damages because it has suffered no loss of use.

AVX next makes the argument that any attempt to recover under a theory of "stigma damages" should be dismissed. First, AVX argues that if stigma damages are recoverable they are effectively a recovery for diminution in value. As mentioned, AVX has asserted that Horry Land cannot recover diminution in value because Horry Land's damages are limited to loss of use. Therefore, stigma damages would not be appropriate where the injury is temporary in nature. Second, AVX alleges that stigma damages are not recoverable under South Carolina law. It cites to Gray and states that the court recognized the general rule at the time[2] of disfavoring the award of "reputation" damages and that at the time the Gray opinion was written, very few cases had considered the idea. Id. AVX notes that the court in Gray ultimately determined that it did not need

---

[2]Gray was decided on August 31, 1971.

to rule on the issue of reputation damages. Id. However, AVX asserts that <u>Gray</u> should serve as a stern warning against extending South Carolina law to include stigma damages.

This Court first considers AVX's assertion that Horry Land's damages must be considered temporary in nature as a matter of law. As evidence that the property can be cleaned up in a fixed period of time, AVX puts forth the testimony of Mark Hanish. Mark Hanish is a senior geologist with the company ARCADIS and is the project manager for the AVX Myrtle Beach environmental investigation and remediation project. (Decl. of Mark Hanish at ¶ 3, Pl.'s Ex. A). Mr. Hanish states that it is his opinion that the TCE in the groundwater below Horry Land's property can be remediated in a fixed period of time. Id. No time frame was given in Mr. Hanish's original Declaration. However, in his Supplemental Declaration, he states that he believes clean up can be completed in approximately five years, assuming current clean-up standards and no material changes to the anticipated response of DHEC. (Supp. Decl. of Mark Hanish at ¶ 3, Pl.'s Ex. 21).

Horry Land notes that AVX has been undergoing remediation for approximately twenty-eight years. It contends that no one knows when its property can be cleaned up, if ever. To support its position, Horry Land has submitted a Declaration given by Allen L. Chestnut, a professional engineer working as Vice President of S&ME, Inc. Mr. Chestnut notes that he is employed as the senior engineer for S&ME for its current project of providing environmental consulting services to Horry Land concerning the property in question. (Decl. of Allen L. Chestnut, at ¶ 3, Def.'s Ex. A). He states, "To a reasonable degree of engineering certainty, with the available data, it is not possible to determine a fixed time period in which the contamination on Horry Land's property can be cleaned up." Id. at ¶ 4. He further notes,

The pump and treat remediation system on AVX's property is not adequately remediating the contamination on Horry Land's property . . . At this time, ARCADIS, under the direction of SCDHEC, is evaluating an injection remediation method to use on Horry Land's property. This method is still being pilot tested on Horry Land's property and has not been approved as the preferred remedial alternative for Horry Land's Property by SCDHEC.

Without knowing the extent of the contamination on Horry Land's property and without having an approved and effective remediation technique employed on Horry Land's property, it is presently impossible to determine the period of time in which the contamination on Horry Land's property will be remediated to the reasonable satisfaction of SCDHEC.

Id. at ¶¶ 5 and 6.

Reviewing the record before the Court in the light most favorable to counter-claimant Horry Land as non-moving party, this Court cannot conclude as a matter of law that Horry Land's damages are temporary in nature. There is evidence before this Court that creates a question of fact as to whether damages should be categorized as permanent or temporary. For the foregoing reasons, considering the evidence in the record, summary judgment based upon the absence of damages is denied.

This Court notes that since it has determined there exists an issue of fact as to whether damages are permanent or temporary, it is unnecessary to determine the sufficiency of Horry Land's ability to recover damages under the temporary damages measurement, "loss of use." Nevertheless, this Court concludes that evidence in the record is sufficient to allow the claims to survive summary judgment, even if based solely upon damages measured by "loss of use" at this stage in the proceedings. Additionally, the Court cannot at this time conclude that damages asserted by Horry Land are merely speculative.

The final issue regarding damages concerns whether Horry Land can recover for any stigma, or psychological damages, attached to its property due to its contamination. This Court notes that it has carefully reviewed the cases cited by AVX and Horry Land in their briefs on the issue of stigma damages, namely the cases Gray v. Southern Facilities, Inc., 183 S.E.2d 438 (S.C. 1971); Piggy Park v. Schofield, 162 S.E.2d 705, (S.C. 1968); Clark v. Greenville County, 437 S.E.2d 117 (S.C. 1993); Yadkin Brick Co. v. Materials Recovery Co., 529 S.E.2d 764, (S.C. Ct. App. 2000); and Raven v. Greenville County, 434 S.E.2d 296 (S.C. Ct. App. 1993). These cases do not provide explicit guidance regarding the issue at hand. In fact, only the court in Gray acknowledges the issue directly. However, even Gray mentions stigma damages generally, rather than specifically. Nevertheless, Gray is a suitable starting point for this Court's analysis.

In Gray v. Southern Facilities, Inc., Gray brought suit against the defendants, alleging that their negligence in the operation of gasoline storage tanks caused gasoline to be pumped into a nearby creek. Gray., 183 S.E.2d 438, 439. He alleged that the creek ignited and caused damage to his property. Id. At trial, the judge granted involuntary nonsuit for lack of actual or physical damages resulting from any alleged negligence. Id. The South Carolina Supreme Court reviewed the record and determined that no physical damage befell the property. Id.

Gray contended that his property was damaged because his land depreciated in value as a result of the fire. Id. at 443. The court noted that Gray essentially sought to recover based on damage to his property's reputation. Citing 22 Am.Jur.2d 199, Damages, Sec. 136, the court noted, "injury to the reputation of . . . property has been held not to be a proper element of damages." Id. However, the court then noted that, at the time, there were very few cases that considered this issue, and no firmly established rule had been developed. Id. The court stated, "Under the circumstances of this case

we deem it unnecessary for us to decide whether or not, or under what circumstances, damages might be recovered for injury to the reputation of real property." Id. Then, the court held that Gray could not recover because his evidence as to diminution of market value was speculative in amount and as to the portion attributable to the defendants. Id. at 444.

AVX asserts that Gray does not allow for stigma damages. This Court does not conclude that Gray is a bar to stigma damages under all circumstances. The court in Gray decided it did not need to address the issue. Further, the court in Gray does cite a source which states that reputation damages to property have been held to be an improper measure of damages. However, immediately after noting this citation, the court stated that its own research revealed very few cases on the issue. Notably, the court then concluded that it did not appear that a definitive rule on the topic had been developed.

Finally, this Court does not find that Gray stands for the proposition that stigma damages by their nature are speculative, and therefore can never be recovered. As mentioned, the court in Gray withheld addressing the issue of stigma damages definitively. Therefore, any conclusions the court reached about the speculative nature of damages in Gray cannot be attributed exclusively to the damages being characterized as damages to the reputation of the property.

This Court also notes that the case Yadkin Brick Co. v. Materials Recovery Co. involved a claim for diminution in property value resulting from the presence of contaminated soil on the plaintiff's property. Yadkin, 529 S.E.2d 764, 766. The trial court granted the defendant's motion for directed verdict on this claim because Yadkin "failed to show a permanent injury to the property." Id. This Court is not persuaded that Yadkin precludes the recovery of stigma damages in every case.

Since the South Carolina Supreme Court decided Gray, there have been several instances where courts in other jurisdictions have addressed the issue of stigma damages either directly or

indirectly. This Court notes that it has found several cases where courts in other jurisdictions have

held that stigma damages may be recovered under certain circumstances.[3] Given the authority this

_____

[3]

See 5-33 Environmental Law Practice Guide § 33.02 (Michael B. Gerrard ed., Matthew Bender). This treatise cites to several cases to explain the general requirements to recover under a claim of stigma damages. Although the specifics of the law may differ from one jurisdiction to the next, this Court notes the following cases cited by this treatise which either explicitly or implicitly acknowledge the ability to recover stigma damages in other jurisdictions:

> In re Paoli R.R. Yard PCB Litig., 113 F.3d 444, 463 (3d Cir. 1997) (requiring that property owner demonstrate physical damage to property to recover stigma damages in addition to "damage caused by negative publicity alone"); Adams v. Star Enterprise, 51 F.3d 417, 424 (4th Cir. 1995) (property owners could not recover stigma damages for nearby oil spill under negligence and nuisance theories because their land was not contaminated); Berry v. Armstrong Rubber Co., 989 F.2d 822, 829 (5th Cir. 1993) (affirming district court's dismissal of claim for stigma damages because property owner failed to demonstrate that defendant's hazardous substances physically damaged his property); Mercer v. Rockwell Int'l Corp., 24 F. Supp. 2d 735, 744-45 (W.D. Ky. 1998) (defendant's release of PCBs onto plaintiff's property must have caused a health risk for plaintiff to recover stigma damages); Adkins v. Thomas Solvent Co., 487 N.W.2d 715, 725 (Mich. 1992) (denying property owner's claim for property depreciation because neighboring waste site did not contaminate owner's land); Chance v. BP Chems., Inc., 670 N.E.2d 985, 993 (Ohio 1996) (affirming trial court's ruling that stigma alone is insufficient grounds for trespass claim); Golen v. Union Corp., 718 A.2d 298, 300 (Pa. Super. Ct. 1998) (denying property owner's claim for property depreciation because neighboring waste site did not contaminate owner's land); Walker Drug Co. v. La Sal Oil Co., 972 P.2d 1238, 1246 (Utah 1998) (property owners must prove that hazardous substance migrated to property and caused physical injury to recover stigma damages). But see Lewis v. General Elec. Co., 37 F. Supp. 2d 55, 61 (D. Mass. 1999) (property owners had cognizable nuisance claims because of diminished property value, even though property was not contaminated); Mehlenbacher v. Akzo Nobel Salt, Inc., 71 F. Supp. 2d 179, 189 (W.D.N.Y. 1999) (property owner can recover stigma damages if "use and enjoyment of ... property has been unreasonably interfered with").

5-33 Environmental Law Practice Guide § 33.02[5] at FN 158. Note that Mehlenbacher was vacated and remanded for further proceedings based upon the Second Circuit Court of Appeals' holding that the district court failed to determine whether it had subject matter jurisdiction. Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 297-98.

Court has noted that permit the recovery of stigma damages, at least under certain circumstances, and

the absence of clear precedent in South Carolina on the issue, this Court cannot conclude at this stage

in the litigation that the record is sufficient to support a dismissal of this claim.

**II.     Negligence and Negligence Per Se**

Counter-defendant AVX seeks dismissal of Horry Land's counter-claims of negligence and

negligence per se for failure to provide any probative evidence of recoverable damages. As previously

discussed, this Court has determined that there exists a question of fact concerning damages.

Therefore, AVX's motion for summary judgment is denied as to the claims of negligence and

negligence per se.

---

(2nd Cir. 2000). The Second Circuit noted that because jurisdiction had not been established, it could not determine the questions raised on appeal. Id. at 299.

> Rudd v. Electrolux Corp., 982 F. Supp. 355, 372 (M.D.N.C. 1997) (North Carolina law permits recovery of stigma damages for permanent nuisance, not abatable or temporary nuisance); Santa Fe Partnership v. ARCO Products Co., 54 Cal. Rptr. 2d 214, 224 (Cal. Ct. App. 1996) (landowner could not recover damages for stigma because oil contamination was "abatable and temporary, rather than permanent"); Terra Prods., Inc. v. Kraft Gen. Foods, 653 N.E.2d 89, 91-92 (Ind. Ct. App. 1995) (property owner may recover for diminished property value if PCB contamination permanently damaged owner's land).
>
> 5-33 Environmental Law Practice Guide § 33.02[5] at FN 160.

### III. Nuisance

Counter-defendant AVX asserts that it is entitled to summary judgment on the claim of nuisance because there is no evidence of unreasonable interference. "A private nuisance[4] in South Carolina is a substantial and unreasonable interference with the use and enjoyment of another's property." In re Wildewood Litig., 52 F.3d 499, 503 (4th Cir. 1995). Additionally, nuisance has been defined as "anything which works hurt, inconvenience, or damages; anything which essentially interferes with the enjoyment of life or property." Raven v. Greenville County, 434 S.E.2d 296, 306 (S.C. Ct. App. 1993) (quoting Neal v. Darby, 318 S.E.2d 18, 23 (S.C. Ct. App. 1984)). The record in this case is sufficient to create a question of fact as to whether there has been an unreasonable interference with counter-claimant Horry Land's property by AVX. Additionally, the evidence presented before this Court is sufficient to create a question of fact as to whether Horry Land has suffered in its use and enjoyment of its land. Therefore, the record does not support an entry of summary judgment on the claim of nuisance.

### IV. Trespass

AVX alleges that Horry Land fails to establish a claim of trespass because, among other reasons, it has failed to establish "intent." In South Carolina, trespass has been defined as, "[t]he unwarrantable entry on land in the peaceable possession of another, . . . without regard to the degree of force used, the means by which the enclosure is broken, or the extent of the damage inflicted." Snow v. City of Columbia, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991). It is also noted, "The entry

---

[4]While often referred to only as "nuisance", from the case law cited and the elements of the cause of action debated by both parties, it is evident that the claim is for private nuisance and not public nuisance.

itself is the wrong. Thus, for example, if one without license from the person in possession of land walks upon it, or casts a twig upon it, or pours a bucket of water upon it, he commits a trespass by the very act of breaking the enclosure." Id. " It is immaterial whether any further damage results." Id. The court in Snow also stated that there must be an intentional, affirmative act, and the harm that results "must be the direct result of that invasion." Id. (citation omitted). On the element of intent, the court in Snow stated the following:

> Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act. Snakenberg v. Hartford Casualty Insurance Co., 299 S.C. 164, 383 S.E.2d 2 (Ct.App.1989). Although neither deliberation, purpose, motive, nor malice are necessary elements of intent, the defendant must intend the act which in law constitutes the invasion of the plaintiff's right. Id. Trespass is an intentional tort; and while the trespasser, to be liable, need not intend or expect the damaging consequence of his entry, he must intend the act which constitutes the unwarranted entry on another's land. See Phillips v. Sun Oil Co., 307 N.Y. 328, 121 N.E.2d 249 (1954); Lee v. Stewart, supra (it is immaterial whether defendant in committing the trespass actually contemplated the resulting damage to plaintiff).

> Id.

After reviewing the law of South Carolina on trespass and the record of this case, this Court concludes that there is an issue of fact as to whether a trespass was committed on the counter-claimant Horry Land's property.

## V.    Strict Liability

AVX alleges that the type of contamination on Horry Land's property, as a matter of law, does not constitute an "ultrahazardous activity." AVX cites Shockley v. Hoechst Celanese Corp., 996 F.2d 1212 (4th Cir. 1993) which states, "we hold that, because the law of South Carolina currently does not recognize strict liability for damages caused by hazardous waste disposal or reclamation, the district court erred in denying appellants' JNOV motions on the strict liability count." Id.

Approximately two weeks after the Fourth Circuit decided <u>Shockley</u>, the South Carolina Court of Appeals decided a case where, among other issues, a group of landowners appealed the trial court's refusal of their request to "charge the jury that the disposal of toxic, cancer-causing chemicals is an abnormally dangerous activity as a matter of law." <u>Raven v. Greenville County</u>, 434 S.E.2d 296, 304 (S.C. Ct. App. 1993). This Court finds it particularly important that the trial judge submitted the question of strict liability to the jury. <u>Id.</u> The appellate court stated, "The extent to which the common law recognizes strict liability is limited to a few narrowly defined categories such as cattle trespass, public callings, certain kinds of nuisances, and ultra-hazardous activities." <u>Id.</u> (citing <u>Snow v. City of Columbia</u>, 409 S.E.2d 797, 800 (S.C. Ct. App. 1991). The court in <u>Raven</u> then explains that the South Carolina legislature and South Carolina Supreme Court have not declared the handling of dangerous chemicals as an activity for which the participate will be held strictly liable. <u>Id.</u> at 305-05. However, the court then noted that there is a "current trend of legal thought" which suggests that "those who manufacture, handle and store abnormally dangerous pollutant substances should be held strictly liable for injury resulting from those activities." <u>Id.</u> at 305 (citations omitted).

Ultimately the court in <u>Raven</u> concluded, "Whether an activity is abnormally dangerous must be determined on a case by case basis." <u>Id.</u> (citing <u>T & E Industries, Inc. v. Safety Light Corp.</u>, 587 A.2d 1249, 1259 (N.J. 1991)). The court continued to note that "authorities are split over whether the court or the jury should make the determination that a particular activity is abnormally dangerous." <u>Id.</u> (citations omitted). In light of the fact that the trial court in <u>Raven</u> permitted the jury to decide the question of strict liability, this Court cannot conclude that, as a matter of law, the actions allegedly committed by AVX do not constitute an ultrahazardous activity.

## VI.	Punitive Damages

As to this issue, AVX first asserts that Horry Land's request for punitive damages must fail because there is no causal relationship between the alleged actions of AVX and the alleged damages suffered by Horry Land. Based on the record in this case, the Court determines that there is a genuine issue of material fact regarding causation.

Next, AVX asserts that punitive damages fail for lack of flagrant conduct on the part of AVX. In a case involving punitive damages in relation to a trespass cause of action, the court in Fox v. Munnerlyn, 323 S.E.2d 68, 69-70 (S.C. Ct. App. 1984) stated, "Only when a defendant's acts have been wilful, wanton or in reckless disregard of the rights of another can exemplary damages be justified." (citing Matheson v. American Tel. & Tel. Co., 135 S.E. 306 (S.C. 1926)). Taking into consideration all the information before this Court, including testimony from the hearing, this Court cannot conclude at this time that counter-defendant AVX's alleged conduct was not flagrant or reckless as a matter of law. For this reason, the counter-defendant AVX's motion for summary judgment on the issue of punitive damages is denied.

## CONCLUSION

For the reasons set forth herein, the counter-defendant AVX's motion for summary judgment is **DENIED** as to all claims. (Doc. # 81).

**IT IS SO ORDERED**.

s/Terry L. Wooten
                                                  TERRY L. WOOTEN
                                                  United States District Judge

February 22, 2010
Florence, South Carolina