UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| AVX CORPORATION, | ) | Civil Action No.: 4:07-cv-3299-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| | ) | |
| HORRY LAND COMPANY, INC. | ) | |
| and UNITED STATES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

This action involves allegations of environmental contamination allegedly originating on

Plaintiff AVX Corporation's (AVX) Myrtle Beach, South Carolina plant site and migrating to land

owned by Defendant Horry Land Company, Inc.  It appears that AVX discovered contamination in

the early 1980s and retained counsel.  Thereafter, an environmental consultant(s) was engaged and

testing and clean-up activities were pursued.  In 1995, AVX notified the South Carolina Department

of Health and Environmental Control (DHEC) of the contamination.  AVX presented to DHEC a

report dated June 20, 1995, prepared by an environmental consulting firm, Geraghty & Miller, Inc.

(G&M).  The report indicates AVX discovered and monitored contamination on its site in the early

1980s and thereafter evaluated and conducted cleanup activities through the date of the report.  The

report recommended monitoring and remedial measures going forward.

In the present case, AVX seeks to recover certain response costs associated with the said

contamination pursuant to the Comprehensive Environmental Response, Compensation and Liability

Act (CERCLA), 42 U.S.C. §§ 9601, et. seq. and for a declaration of liability pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Horry Land Company filed a counterclaim, alleging causes of action based upon, among others, negligence and trespass. Presently before the Court are AVX's Motion for Protective Order (Document # 109) and Defendant Horry Land Company's Motion to Compel (Document # 137). This matter has been referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).

## II.  DISCUSSION

### A.  Nature of the Dispute

In AVX's original Motion for Protective Order, it sought protection from certain questions posed by counsel for Horry Land Company during the depositions of two AVX employees, Larry Blue and Dennis Oldland, the responses to which, AVX argued, would require the disclosure of information protected by the attorney-client privilege, the work product doctrine, and/or the self-evaluation privilege. AVX also seeks protection from producing documents it claims are protected by those same privileges.

In it's Motion to Compel, Horry Land Company seeks the production of the documents AVX seeks to protect. In its first Request for Production of Documents, in Request number two, Horry Land Company seeks "Any and all statements, reports, analyses, studies, letters, correspondence, memoranda, records or notations of conversations or conferences or other documentation that you will utilize during the course of the proceedings of this action or at trial." In Request number five, Horry Land Company seeks "A copy of any and all handling procedures promulgated or utilized by Plaintiff with regards to the use and storage of TCE at its facility located on 17th Avenue South in Myrtle Beach, South Carolina." In Request number 6, Horry Land Company seeks, "A copy of any

and all documents that show, imply or support the positions that some or all of the TCE contamination found on Defendant's property originated from an entity other than AVX or from a property not under the control of Plaintiff."

In its second Request for Production of Documents, in Request number 1, Horry Land Company seeks "All files maintained by Plaintiff of any of its employees or agents regarding the discovery, investigation, and remediation of trichloroethene (TCE), 1,1,1-trichloroethane (1,1,1-TCA), 1,2-dichloroethane, and related chlorinated VOCs contamination at Plaintiff's facility located in Myrtle Beach, South Carolina." In Request number 2, it seeks "Any and all documents regarding the removal of contaminated soil from Plaintiff's Myrtle Beach facility; including but without limitation documents showing date of removal, amount of removal, reasons for removal, persons removing and disposition of removal material." In Request number 4, it seeks "Any and all documents, including but not limited to, photographs, internal reports and reports to governmental agencies, which concern the release of contaminants resulting from the bursting or destruction of a pipe during the excavation of soils at Plaintiff's Myrtle Beach facility."

AVX objects to these document requests, arguing, as stated above, that the documents sought by Horry Land Company are protected by the attorney-client privilege, the work product doctrine, and the common law and statutory self-evaluation privileges. AVX also objects to producing communications with insurance companies. It argues that, in addition to the protections provided by the attorney-client privilege, the work product doctrine, and the statutory and common law audit privileges, insurance documents enjoy additional protections.

On September 27, 2010, the undersigned entered an Order (Document # 176) finding the common law self-evaluation privilege inapplicable and directing Plaintiff to produce copies of the

redacted documents and the withheld documents (collectively, "the documents at issue") for an in camera review. AVX has presented approximately 2,500 pages of documents for review, some of which have been disclosed in redacted form and some withheld completely. The documents disclosed in redacted form are labeled AVXRED00001-AVXRED01524. The documents withheld completely are labeled AVXPRIV00001-AVXPRIV01025.[1]

The redacted portion of the disclosed documents and the withheld documents include information and communications involving employees of AVX, environmental consultants from one of several environmental consulting firms, attorneys retained by AVX and/or employees of the attorneys retained by AVX, and others. Some of the documents involve communications with an insurance company. The issues before the court are whether AVX has met its burden of establishing that the documents at issue are protected by the attorney-client privilege, the work product doctrine, or the self-evaluation privilege set forth in the South Carolina Environmental Audit Privilege and

---

[1]Along with its in camera production of documents to the court, AVX also identifies three categories of documents that AVX asserts Horry Land Company has agreed are protected. These include (1) documents in AVX's file prepared by AVX's counsel, Wyche Burgess, and communications between AVX and its counsel, Wyche Burgess, (2) documents in AVX's file prepared by AVX's counsel, Nixon Hargrave, and communications between AVX and its counsel, Nixon Hargrave, and (3) documents in AVX's file prepared by AVX's counsel Parker, Poe, Adams & Bernstein, LLP and communications between AVX and its counsel, Parker, Poe, Adams & Bernstein, LLP. AVX has not presented the documents falling within these three categories for in camera review and Horry Land Company has not objected. See Privilege Log submitted to court with documents at issue (attached as an Exhibit) ("As AVX understands, AVX and Horry Land are in agreement that all documents involving the law firm of Parker Poe Adams & Bernstein[,] . . . involving communications between the law firms of Wyche, Burgess or Nixon Hargrave or Nixon Peabody, on one hand, and AVX, on the other, [and] . . . all internal law firm communications are protected.").

AVX also identifies a fourth category of documents: communications regarding law firm consultant invoices. AVX produced only a "sampling" of these documents to the court for in camera review but states that, if the court holds that this category of documents should be produced, it will produce all documents within this category to Horry Land Company.

Voluntary Disclosure Act, S.C. Code Ann. § 48-57-30(A).

B.     Privilege Log

Before addressing the various protections AVX asserts are applicable to the documents at

issue, it is necessary to discuss the requirement that a privilege log be submitted by any party

objecting to the production of documents based upon a privilege or other protection.    Rule

26(b)(5)(A) provides:

> When a party withholds information otherwise discoverable by claiming that the
> information is privileged ..., the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not
> produced or disclosed-and do so in a manner that, without revealing information
> itself privileged or protected, will enable other parties to assess the claim.

Fed.R.Civ.P. 26(b)(5)(A).

Generalized claims of privilege are insufficient.  Richardson v. Sexual Assault/Spouse Abuse

Research Center, Inc., No. MJG-09-3404, 2010 WL 4290327,  *5 (D.Md. Oct. 28, 2010).   To

comply with the requirements set forth in Rule 26(b)(5)(A), a party seeking protection from

producing documents must produce a privilege log that "identifies each document withheld,

information regarding the nature of the privilege/protection claimed, the name of the person

making/receiving the communication, the date and place of the communication, and the document's

general subject matter." Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 264

(D.Md.2008).  The party asserting the privilege "must identify the elements of the applicable

privilege and demonstrate that each element is present for each document for which they claim the

existence of a privilege." Richardson, 2010 WL 4290327,  *5 (citing Fed.R.Civ.P. 26(b)(5)(A)(I)).

It is undisputed that AVX failed to produce a privilege log along with its objections to Horry

Land Company's requests for production of documents.  AVX agreed to provide the privilege log after Horry Land Company filed its original Motion to Compel.  The privilege log, dated March 20, 2009[2], lists the date of each document, to whom and from whom it was sent, and a brief description of the document.  On September 27, 2010, the court ordered AVX to revise its privilege log dated March 20, 2009, (Document # 175) to include the bates-stamp numbers for each entry on the privilege log and to provide the revised log along with the documents listed therein for an in camera review.  The privilege log does not identify the privilege asserted for each document.  Rather, AVX appears to assert that every privilege or protection addressed in its briefs to the court, that is, attorney-client privilege, work product protection, and the statutory and common-law self evaluation privileges, applies to every document listed on the privilege log.  AVX's failure to identify the elements of the applicable privilege and demonstrate that each element is present for each document renders the privilege log insufficient because it does not allow Horry Land Company or the court to make an individualized determination as whether each document is protected from discovery.  See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1b, 230 F.R.D. 398, 406 (D.Md.2005) ("The standard for testing the adequacy of a privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.").  Further, it is noted that, in many instances, the privilege log lists the recipients of a document as an attorney first and then an employee of AVX when the document is actually directed to the AVX employee and is simply copied to the attorney.  Also, some descriptions identify the documents as handwritten notes concerning impressions of counsel when the notes are actually those of a non-attorney employee of a law firm, fax cover sheets that do not communicate

---

[2]This privilege log was filed with the court on September 27, 2010 (Document # 175).

any information are incorrectly identified, as well as other incorrect or inadequate entries on the privilege log.

Failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege. See Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., No. 5:05CV41, 2006 WL 2715164, at *4 (N.D.W.Va. Sept. 22, 2006) ("Failure to timely produce a privilege log or the production of an inadequate privilege log may constitute waiver of any asserted privileges."); Ruran v. Beth El Temple of W. Hartford, Inc., 226 F.R.D. 165, 168-69 (D.Conn.2005) (finding attorney-client privilege waived because defendant failed to provide a privilege log and consequently failed to perfect privilege claim); Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 20-21 (D.D.C.2004) ("withholding of such a privilege log may ... be viewed by the court as a waiver of any privilege or protection"). AVX did not produce a privilege log along with its objections to Horry Land Company's discovery requests. Furthermore, once the privilege log was produced, it was insufficient for the reasons discussed above. It is not the duty of the court to sift through the numerous documents presented and attempt to discern which privileges or protections may apply to any given document or portion of a document. Thus, Horry Land Company's Motion to Compel should be granted (and AVX's Motion for Protective Order denied) for this reason alone. Nevertheless, for the reasons discussed below, Horry Land Company's Motion to Compel is granted (and AVX's Motion for Protective Order denied) on the merits as well.

C.     Attorney-Client Privilege

The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976). The Fourth Circuit has adopted the following test for determining whether the attorney-client privilege exists:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir.1998) (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982) (quoting United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D.Mass.1950))).[3]  "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability."  United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982).

The attorney-client privilege is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).  The privilege "protects 'not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer . . .,' " Hanson v. U.S. Agency for Int'l Dev., 372 F.3d 286, 291 (4th Cir.2004) (quoting Upjohn, 449 U.S. at 390, 101 S.Ct. 677), and the gathering of information by the attorney, In re Allen, 106 F.3d 582, 602 (4th Cir. 1997), to enable him to give informed advice.

Because its application interferes with "the truth seeking mission of the legal process," United States v. Tedder, 801 F.2d 1437, 1441 (4th Cir.1986), however, the attorney-client privilege is disfavored, In re Allen, 106 F.3d at 600 (internal citation omitted), and courts must narrowly

---

[3]Because this case is based upon a federal cause of action, the court must apply "'the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'"  Hawkins, 148 F.3d at 382 (citing Fed.R.Evid. 501).

construe the privilege and recognize it "only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

In the present case, AVX seeks to protect documents which contain communications among itself, its counsel, counsel's employees, and persons and entities identified as "consultants," the identity of whom AVX argues is protected, as well as others. Bradford Wyche, Robert Witmer, Jr., and Jean Hutchinson McCreary have all worked as counsel for AVX regarding environmental issues related to the issues addressed in the motions before the court. As set forth in more detail below, they opine that the information and documents at issue are subject to protection and, thus, are immune from discovery.

Because AVX does not identify in its privilege log the privileges it argues apply to each document, the court must assume that AVX is asserting that the attorney-client privilege applies to all the documents at issue. Importantly, although the documents at issue involve communications between and among the multiple categories of people set forth above, in its briefs and other evidence presented to the court, AVX addresses only the question of the applicability of the attorney-client privilege to communications involving the environmental consultant(s). Accordingly, the court is unable to engage in anything more than a general discussion of the applicability of the privilege to these other categories of communications because those issues have not been briefed by AVX. Therefore, the court will first address AVX's arguments regarding the communications with third-party consultant(s) and then move on to the other communications that appear in the documents at issue.

AVX cites to In re Bieter Co., 16 F.3d 929 (8th Cir.1994) and its progeny in support of its argument that the communications with the consultant fall within the attorney-client privilege. In Bieter, the court found that the consultant was hired by the client and, among other things, worked as a representative of, and advisor to, the client regarding certain business dealings. Id. at 933. Bieter sought protection over materials that contained communications between its attorneys and the business consultant, an individual who had worked closely with Bieter both in its attempt to develop a parcel of land and in subsequent litigation. Id. at 931. The consultant and Bieter entered into a agreement, which provided for the consultant to work out of Bieter's office and to be paid a monthly fee and expenses. Id. The agreement was to run for one year. Id. The consultant worked with architects, consultants, and counsel, and appeared at public hearings on behalf of Bieter and was viewed and dealt with as a representative of Bieter. Id. at 934. The court concluded that "[t]here is no principled basis to distinguish [the consultant's] role from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand Bieter's reasons for seeking representation. As we understand the record, he was in all relevant respects the functional equivalent of an employee." Id. at 938 (internal citations omitted). The court then addressed the factors to consider when addressing whether the attorney-client privilege is applicable to an employee's communications and concluded that the communications between the consultant and Bieter's counsel were protected. Id. at 940. See also MLC Automotive, LLC v. Town of Southern Pines, No. 1:05-cv-1078, 2007 WL 128945 (M.D.N.C. Jan. 11, 2007) ( finding the role of the consultant at issue to be akin to the roles of other independent contractors in the In re Bieter line of cases); Neighborhood Development Collaborative v. Murphy, 233 F.R.D. 436, 440 (D.Md. 2005) (finding the consultant's

role to be "most analogous to that of the business consultant in <u>In re Bieter</u>").

AVX presents evidence in the form of Declarations of attorneys Wyche, Witmer, McCreary, and a consultant regarding the nature of the engagement and involvement of the consultant at issue in this case. Wyche declares,

> As one of the lawyers for AVX, and in the course of my providing legal advice to AVX, I worked with a environmental consulting firm that assisted me and other counsel in the provision of legal advice to AVX with respect to AVX's Myrtle Beach facility. This environmental consulting firm acted as a consulting expert to the lawyers in our representation of AVX. The consulting firm provided technical assistance to the legal counsel and to AVX.

Wyche Declaration dated July 1, 2010[4] (Document # 147-1) ¶ 9. Witmer declares,

> As the principal client relationship lawyer for AVX, and in the course of my providing legal advice to AVX, <u>I engaged</u> and worked with an environmental consulting firm that assisted me and my firm in the provision of legal advice to AVX with respect to AVX's Myrtle Beach facility. This environmental consulting firm acted as a consulting expert to the lawyers in our representation of AVX. The consulting firm provided technical assistance to our Firm in order to enable us to provide legal advice to AVX. . . .
>
> I may not have reviewed or been sent all documents prepared by consultants <u>working at our direction</u> but all of the materials were part of the development and implementation of our legal strategy and were part of the end product of the consultant for the lawyer to be able to develop opinions and provide legal advice to the client.

Witmer Declaration dated July 2, 2010 (Document # 147-2) ¶¶ 6, 8 (emphasis added). McCreary declares,

> As one of the lawyers for AVX, and in the course of my providing legal advice to AVX, I regularly work with an environmental consulting firm that assist [sic] me and my firm in the provision of legal advice with respect to AVX's U.S. operating facilities, including its Myrtle Beach facility. We engage environmental consulting firms to act as a consulting expert to the lawyers in our firm's representation of AVX,

---

[4]There appears to be three different Wyche declarations in the record. Accordingly, they will be distinguished by date and document number.

and do so subject to the explicit understanding that their work is for the purpose of enabling us to provide legal advice to our client with our legal opinions and advice having been informed by technical information developed by the consultant working under the direction of the attorneys. . . .

In the course of engaging a consultant to support our rendering legal advice to AVX, we expressly instruct the consultant in the existence of the attorney-client privilege, the procedures they are required to institute in order to maintain the privilege, and provide cautions against the inadvertent waiver of the privilege.

These practices are established as standing operation procedures within the Environmental Practice Group, and are followed routinely for all engagements of consultants in support of our legal advice to clients.

McCreary Declaration dated July 1, 2010 (Document # 147-3) ¶¶ 6-8. Finally, the project manager for an environmental consulting firm that worked with AVX and its counsel also submitted a declaration[5]:

In the early 1980's, I was employed by an environmental consulting firm. At that time, the environmental consulting firm with which I was employed worked with AVX Corporation's ("AVX") legal counsel and with AVX with respect to AVX's Myrtle Beach, South Carolina facility. I became the project manager for the work my environmental consulting firm conducted at the AVX Myrtle Beach facility.

During the time my environmental consulting firm worked with AVX, AVX had legal counsel in South Carolina and in New York. AVX's legal counsel actively participated with my environmental consulting firm and AVX in evaluating issues with respect to the Myrtle Beach facility.

I understood that my environmental consulting firm was to provide technical assistance to legal counsel and AVX. . . . We provided assistance to enable the law firms to provide legal advice. The assistance we provided and the opinions we rendered were based upon confidential information we received from the client.[[6]]

Our investigation and addressing of these issues was not for purposes of day-to-day

---

[5]It is noted that more than one consulting firm is identified in the documents submitted for in camera review.

[6]The record does not support this assertion that the "confidential information" was "received from the client."

environmental compliance in the ordinary course of business. It was to advise the company in connection with potential litigation and liabilities that were evaluated from the outset.

Project Manager Declaration dated July 1, 2010 (Document # 147-4) ¶¶ 3-6.

The Declarations and other evidence in the record do not support AVX's position that the consultants were the functional equivalent of employees of AVX. Unlike Bieter, there is no indication here that any consultant was hired by AVX, appeared as a representative of AVX, or otherwise functioned as an employee of AVX. Thus, AVX's reliance on Bieter is misplaced. The attorney-client privilege is not applicable to the communications between the environmental consultant and AVX's legal counsel based upon the environmental consultant's role as the "functional equivalent" of an employee of AVX. Also, as Bieter involves communications between the "functional equivalent" of an employee and the attorney, it is likewise inapplicable to the other communications reflected in the documents presented for in camera review.

However, the privilege has also been applied to outside consultants hired by an attorney to assist in the rendition of legal services. See United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (citing United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)). It appears from the declaration of Mr. Witmer that at least one of the consulting firms was hired by counsel for AVX. Witmer declares, "I engaged and worked with an environmental consulting firm," and that the consultants were "working at my direction." Witmer Declaration dated July 2, 2010 (Document # 147-2) ¶¶ 6, 8. Further, McCreary sets forth in her Declaration the standard procedure for engaging environmental consultants for the purpose of enabling the attorneys to provide legal advice. McCreary Declaration dated July 1, 2010 (Document # 147-3) ¶¶ 6-8.

However, retention or employment by the attorney alone is insufficient to bring the

consultant within the scope of the attorney-client privilege.  See Kovel, 296 F.2d at 921 ("Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.").  Also, "[c]ommunications with the attorney's agent must meet the same confidentiality and legal purpose requirements that are applicable to all other attorney-client communications that are claimed to be privileged."  Paul R. Rice, Attorney-Client Privilege in the United States § 3.5 (2d Ed. 2010) (citing Occidental Chemical Corp. v. OHM Remediation Services Corp., 175 F.R.D. 431, 436 (W.D.N.Y. 1997)).

Importantly, "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."  Kovel, 296 F.2d at 922.     In Kovel, the court held that "the attorney client privilege can attach to reports of third parties made at the request of the attorney of the client where the purpose of the report was to put in usable form information obtained from the client."  Federal Trade Comm'n v. TRW, Inc., 628 F.2d 207, 212 (D.C.Cir.1980).  The Kovel court "analogized the role of the accountant to that of a translator who puts the client's information into terms that the attorney can use effectively."  Id.  The court concluded that the attorney-client privilege applied to communications between the client and an accountant retained by the client's attorney where the communication was in furtherance of providing legal advice by the attorney.  Kovel, 296 F.2d at 921.  The court was careful to note that if the advice given is that of the accountant, rather than the attorney, no privilege exists.  Id. at 922.  Judge Friendly noted that such a distinction was necessary to prevent the unduly expansion of the privilege.  Id. at 923.

The Court of Appeals for the District of Columbia Circuit recognized this limitation placed

by the Kovel court on the protection of communications involving third-parties and noted that "without such limitations, the attorney-client privilege would engulf all manner of services performed for the lawyer that are not now, and should not be, excluded from the adversary process." Federal Trade Commission v. TRW, Inc., 628 F.2d 207, 212 (D.C. Cir. 1980). The TRW court, relying on Kovel, stated, "the foregoing law must be applied to the facts surrounding the preparation of the [documents at issue], as those facts have been made known to us." Id. The research proposal, itself one of the documents at issue, provided,

> This proposal has been prepared for the TRW Electronics' Legal Department at the request of Richard W. Pogue, Esq., of Jones, Day, Reavis & Pogue, and John E. Davis, Counsel for TRW, Inc., to enable them to advise TRW information Services on the status of its procedures under the Fair Credit Reporting Act.

Id. at 213 (citing Brief of Appellant at 20). The court found this information insufficient to allow for the application of the attorney-client privilege:

> Within the broad limits supplied by TRW, we can conceive of circumstances that might warrant application of an attorney-client privilege to the SRI documents. But other circumstances, equally plausible from the record before us, fall outside any reasonable definition of the privilege. This ambiguity is troublesome and, in the end, is the source of our resolution of the question.
> The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. See, e. g., United States v. Stern, 511 F.2d 1364 (2d Cir. 1975). Where, as here, we have not been provided with sufficient facts to state with reasonable certainty that the privilege applies, this burden is not met. As noted earlier TRW's claim lies at an outer and indistinct boundary of the law of attorney-client privilege. Particularly where this is so, it is our responsibility to tread carefully, with as much precision as the facts before us permit.

Id. The court concluded that the proponent of the privilege failed to meet its burden of establishing that the documents were protected.

The declarations submitted by AVX state generally that the environmental consultants provided technical assistance to counsel for AVX to enable counsel to provide legal advice to AVX

with respect to AVX's Myrtle Beach facility. However, a review of the documents withheld by AVX makes these assertions unclear at best and reveals at least a much more expansive role than that described in the declarations.

A review of the documents submitted by AVX for in camera review reveals several troublesome issues. First, the environmental consultants were not simply putting into usable form information obtained from the client; rather, they were independently gathering their own data, conducting testing, engaging in remedial measures and rendering opinions. Such factual data and the resulting opinions fall outside the attorney-client privilege. See United States Postal Serv. v. Phelps Dodge Ref. Corp., 852 F.Supp. 156, 161-62 (E.D.N.Y.1994) ("[T]hese consultants based their opinions on factual and scientific evidence they generated through studies and collected through observation of the physical condition of the Property, information that did not come through client confidences. Such underlying factual data can never be protected by the attorney-client privilege and neither can the resulting opinions and recommendations.");[7] Occidental Chemical Corp., 175 F.R.D. at 437 (relying on Phelps Dodge).

Second, the environmental consultants were not simply providing technical assistance to the attorneys for the purpose of rendering legal advice, rather they were providing environmental services directly to AVX. Like the court in TRW, the undersigned can conceive of circumstances where portions of some of the communications withheld by AVX could have been given for the

_____

[7]AVX argues that Phelps Dodge is distinguishable because, unlike the consultant in the present case, the consultants in Phelps Dodge were retained by the client to formulate an acceptable remediation plan and oversee remedial work at the property. However, even though AVX has submitted declarations that a consultant was hired in the present case to assist in the provision of legal advice, as stated above, the general statements contained in the declarations fail to support AVX's burden of proof when considered with the documents themselves.

purpose of assisting in the provision of legal advice; however, equally as plausible are circumstances where the same information is provided as environmental consulting advice and/or services. Such advice, as noted in <u>Kovel</u> and <u>TRW</u>, falls outside the attorney-client privilege.

Finally, a specific review of the documents submitted for <u>in camera</u> review reveals that these documents, whether they include communications with an outside consultant or other communications, fall outside the attorney-client privilege. The court has reviewed the documents submitted by AVX for <u>in camera</u> review. However, discussing the asserted privileges as they apply to each individual document would be burdensome. Generally speaking, as for the documents involving communications to or from an environmental consultant, as discussed above, AVX has failed to show that the communication involved gathering information from client confidences or providing information from the client through the consultant to the attorney for the purpose of assisting the attorney in giving legal advice.

For the many communications between a non-attorney employee of the law firm[8] and an employee of AVX, AVX has failed to meet its burden of establishing that the communication was between an attorney and client, that it involved legal advice or that involved information from the client for the purpose of seeking legal advice. Other documents contain communications solely between employees of AVX while others involve communications solely between employees of the

---

[8]For instance, Libby Ford is identified on the privilege log as a Nixon Hargrave Law Firm Employee and is included in many of the communications at issue. Her position within the firm, as indicated in some of the documents at issue, is Senior Environmental Health Engineer. AVX has failed to address how her role as an engineer employed by a law firm entitles her communications to protection under the attorney-client privilege. <u>See Kovel</u>, 296 F.2d at 921 ("Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.").

law firm.  AVX fails to show how these communications fall within the attorney-client privilege.

A good number of the documents at issue are described on the privilege log as handwritten notes

concerning impressions of counsel.[9]  Several of these documents are specifically addressed below.

To qualify for the attorney-client privilege, an attorney's notes must incorporate and reveal a client's

communications.  Cencast Services, LP v. United States, 91 Fed.Cl. 496, 507 (Fed.Cl. 2010) (citing

Cities Serv. Helex v. United States, 216 Ct.Cl. 470, 475 (1978).  In Cencast, the court found that the

attorney's notes did not reveal client communications, but rather simply recounted her or other

attorney's views of the significance of certain issues they encountered.  Id. (citing Am. Nat'l Bank

& Trust Co. of Chicago v. AXA Client Solutions, No. 00 C 6786, 2002 WL 1058776, at *2 (N.D.Ill.

March 22, 2002) ("The handwritten notes merely reflect in-house counsel's own uncommunicated

thoughts, and such recorded and uncommunicated thoughts fall outside the province of the

attorney-client privilege."); Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 6 (N.D.Ill.1980)).  Here,

AVX has failed to show that the handwritten notes incorporate or reveal client confidences or how

they are otherwise protected by the attorney-client privilege.

The undersigned has selected every tenth document[10] to specifically address in this Order:

•       AVXPRIV00026      This document is a one-page fax cover sheet from Libby Ford, an
                                               employee at Nixon Hargrave Law Firm, to Joan Prager, an employee
                                             of AVX.  The information on the cover sheet is not a communication

---

[9]The court has identified forty-seven documents described in the privilege log as
containing "impressions," "mental impressions," or "opinions" of counsel.  Most of the
documents contain notes of Libby Ford.  Even if Ms. Ford's notes could be "impressions of
counsel," while the court appreciates the protection of mental impressions of counsel where work
product protection is applicable, as discussed in detail below, AVX has failed to show work
product protection is applicable to the documents at issue.

[10]The AVXRED and AVXPRIV documents, although listed together on the privilege log,
were produced separately in separate boxes.  Thus, they will be addressed separately here.

between an attorney and client, it is not legal advice, and it is not information obtained from the client for the purpose of giving legal advice. At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXPRIV00041    This document is a one-page fax cover sheet from Libby Ford to Joan Prager. There is no information communicated on this document. Clearly, it does not include legal advice or otherwise qualify for the privilege.

- AVXPRIV00092-
  AVXPRIV00097    This document is from Libby Ford to Dennis Oldland, an employee of AVX. It is not a communication between an attorney and client, it is not legal advice, nor is it information obtained from the client for the purpose of giving legal advice. At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXPRIV00178-
  AVXPRIV00179    This document is from an environmental consultant to Joan Prager. It is carbon-copied to Libby Ford. It is clear from the last sentence in the document that the information contained therein is not for the purpose of giving legal advice. Furthermore, it is not a communication between an attorney and client nor is it information gathered from the client for the purpose of rendering legal advice.

- AVXPRIV00235    On the privilege log, this document is identified as "handwritten notes concerning impressions of counsel" from Libby Ford to AVX. However, the document itself provides no indication that it was directed to or provided to anyone at AVX. The court is unable to conclude after reviewing the document that it involves a communication between an attorney and client or is a memorialization of a communication between an attorney and client, that it is legal advice or that it is information obtained from the client for the purpose of giving legal advice. At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXPRIV00343-
  AVXPRIV00345    This document is from an environmental consultant to Gary Den Braven, an employee of AVX. Bradford Wyche, an attorney for AVX is copied on the document. The opening sentence of the

communication reveals that it involves environmental, rather than legal, advice. Moreover, the document is not a communication from an attorney to client nor does it include information obtained from the client for the purpose of rendering legal advice.

- AVXPRIV00366    This document is identified on the privilege log as "handwritten notes concerning impressions of counsel" from Robert Witmer, an attorney for AVX, to AVX Corporation. However, nothing on the document itself indicates that is was provided to anyone at AVX. The court is unable to conclude after reviewing the document that it involves a communication between an attorney and client or is a memorialization of a communication between an attorney and client, that it is legal advice or that it is information obtained from the client for the purpose of giving legal advice. At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXPRIV00588    This document is a letter from a consultant to Joan Prager and is copied to Libby Ford. Although identified as a report on the privilege log, it is actually a letter referencing a report. It is not a communication between an attorney and client, nor does it involve legal advice. Further, it does not include information obtained from the client for the purpose of giving legal advice.

- AVXPRIV00638-
  AVXPRIV00641    This document is from Libby Ford to Joan Prager. It is not a communication between an attorney and client, it does not involve legal advice, nor does it include information from the client given for the purpose of rendering legal advice. At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXPRIV00680    This document is nothing more than a fax cover sheet from Libby Ford to Joan Prager. There is no information communicated on this document, and, clearly, it does not involve legal advice or otherwise qualify for the privilege.

- AVXPRIV00754-
  AVXPRIV00757    On the privilege log, this document is identified as "handwritten notes concerning impressions of counsel" from Libby Ford to AVX. However, the document itself provides no indication that it was directed to or provided to anyone at AVX. The court is unable to conclude after reviewing the document that it involves a

communication between an attorney and client or is a memorialization of a communication between an attorney and client, that it is legal advice or that it is information obtained from the client for the purpose of giving legal advice. At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXPRIV00998

This document is a letter from a consultant to Gary Den Braven and copied to Bradford Wyche. This letter is not a communication between an attorney and client, does not contain legal advice and does not contain information obtained from the client for the purpose of providing legal advice.

- AVXPRIV01024-
  AVXPRIV01025

This is a letter from Libby Ford to a consultant regarding an invoice for the consultant's work. It is not a communication between an attorney and client nor does it contain legal advice. Furthermore, it does not include information obtained from the client for the purpose of rendering legal advice.

- AVXRED00098-
  AVXRED00109

This is a well sampling report from a consultant to Terry Wearstler, an employee of AVX. This document is not a communication between an attorney and client. In addition, the redacted portions of this document include environmental, not legal, advice. It does not include information obtained from the client for the purposes of rendering legal advice.

- AVXRED00264-
  AVXRED00270

This document is a report from a consultant to AVX. It is not between an attorney and client, the redacted portions of the report do not include information obtained from the client for the purposes of providing legal advice, nor do the redacted portions of the report contain legal advice.

- AVXRED00427-
  AVXRED00428

This document is described on the privilege log as a water analysis report from a consultant to Libby Ford and Joan Prager. However, it is actually a report from a laboratory to a consultant. It is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.

- AVXRED00470-
  AVXRED00478
  This document is a report from a consultant to Gary Den Braven.  It is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.

- AVXRED00554-
  AVXRED00557
  This document is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.  At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXRED00609-
  AVDRED00622
  This document is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.  At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXRED00699-
  AVXRED00707
  This document is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.  At best, the court would have to speculate to conclude that the information contained within this document was given for the purpose of rendering legal advice.

- AVXRED00958-
  AVXRED00974
  This document is described on the privilege log as an environmental audit report.  It is drafted by John Walker and others at AVX for the file.  It is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.

- AVXRED01199-
  AVXRED01202
  This document is from a consultant to Gary Den Braven.  It is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.

- AVXRED01371-
  AVXRED01374        This document is between two employees of AVX, Joan Prager and Jim Dixon.  It is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.

- AVXRED01510-
  AVXRED01511        This document is described on the privilege log as an environmental audit report.  It is from John Walker to Gary Den Braven, both employees of AVX.  It is not between an attorney and client, the redacted portions of the report do not include information collected from the client, nor do the redacted portions of the report involve legal advice.

        AVX presents broad, general, conclusory evidence to support its assertion privilege.  As set forth above, AVX has waived any privilege to these documents initially based upon its failure to provide a privilege log and its subsequently provided insufficient privilege log.  Nonetheless, as shown in the above discussion of a sampling of the documents at issue, the attorney-client privilege is inapplicable to the communications between counsel and outside consultants, as well as the other documents submitted for in camera review.  Even if the court could construe some of the attorney-authored documents, of which there are few, as falling within the privilege, such a finding would require the court to engage in speculation based upon the record presented, and would be inconsistent with the requirement that the privilege be narrowly construed.  Trammel, 445 U.S. at 50.  For these reasons, the undersigned finds AVX's arguments regarding the attorney-client privilege to be without merit.[11]

_____

        [11]Because the court finds the documents are not protected by the attorney-client privilege, it need not discuss in detail Horry Land Company's argument that, to the extent any privilege applies, AVX has waived the protection by disclosing the allegedly privileged communications to Geraghty & Miller, who prepared the 1995 Report presented to DHEC.  However, it is noted that the 1995 Report contains references to soil and groundwater data collected since 1981 as well as references to recommendations and conclusions made by a previous environmental consultant.  As held above, AVX fails to meet its burden of establishing the applicability of the

D.     Work-Product Doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure incorporates the common law articulated in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947). Rule 26(b)(3) protects "things that are prepared in anticipation of litigation," whether they are prepared by a parties' attorney, consultant, or other agent.  This doctrine is premised on the idea that "[n]ot even the most liberal of discovery theories can justify unwarranted inquires into the files and the mental impressions of an attorney." <u>Hickman</u>, 329 U.S. at 510.

The Fourth Circuit has recognized that a party often may prepare documents for multiple purposes, "not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency ... and to respond to regulatory agencies. Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question." <u>National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.</u>, 967 F.2d 980, 984 (4th Cir. 1992).  "The mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity.  The document must be prepared <u>because</u> of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation" <u>Id.</u> (internal citations omitted).

The privilege encompasses both "fact" work product and "opinion" work product. Fact work product, which consists of documents prepared by an attorney that do not contain the attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." <u>In</u>

---

attorney-client privilege, one element of which is the absence of a waiver.  <u>See</u> <u>Hawkins</u>, 148 F.3d at 383.

-24-

re Grand Jury Proceedings, 33 F.3d at 348; see also In re John Doe, 662 F.2d 1073, 1076 (4th Cir.1981) (defining fact work product). Opinion work product, which does contain the fruit of an attorney's mental processes, is absolutely protected. National Union, 967 F.2d at 984.

As with the attorney-client privilege, the party seeking work-product protection has the burden of proof to establish entitlement to it. Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992).

AVX asserts that the documents at issue are also privileged under the work-product doctrine.[12] The issues here are whether the documents AVX seeks to protect were created in anticipation of litigation and whether Horry Land Company has a substantial need for the documents.

The documents at issue here were created during the 1980s and 1990s. Former counsel for AVX, Bradford Wyche, declares in a supplemental declaration that,

> In environmental situations, there is the potential for claims when on-site environmental contamination is discovered as that is an event that reasonably could result in litigation.
>
> Documents were prepared because of the potential for claims (among other reasons) and part of my engagement involved those issues. The potential for litigation was considered and evaluated.

Wyche Supp. Decl. dated April 17, 2009 (Document # 74-6), at ¶¶ 3-4.

Because litigation is an ever present facet of American life, the test set forth in National Union above is not always an easy one to apply. "Nevertheless, a court must be satisfied that the document or tangible thing was not created during the ordinary course of business, pursuant to laws, regulations or other obligations, or for any non-litigation reason." Suggs v. Whitiker, 152 F.R.D.

---

[12]Again, AVX does not set forth in its privilege log which asserted privilege or protection applies to which document. Thus, the court must assume AVX is arguing that the work product doctrine applies to all of the documents at issue.

501, 505-06 (M.D.N.C. 1993) (citing National Union, 967 F.2d at 984). The district court for the Eastern District of Virginia provides a thorough analysis of National Union's anticipation of litigation test:

> National Union's "because of" standard operates on two related principles. First, it protects "work product" that is created because of litigation when that litigation is a real likelihood, but not "work product" that is created "because of" litigation when that litigation is merely a possibility. National Union explained that, "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." National Union, 967 F.2d at 984. Therefore, to receive protection, the "work product" must be prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Id. The preparation of work merely because an attorney "anticipates the contingency" of litigation is not sufficient to qualify the work for the protection afforded by the work-product doctrine. Id.
>
> Second, the "because of" standard is designed to protect only work that was conducted because of for [sic] litigation, not work that would have been done in any event. National Union noted that "materials prepared ... pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation ...." 967 F.2d at 984. National Union drew this rule from Goosman v. A. Duie Pyle, Inc., 320 F.2d 45 (4th Cir.1963). In Goosman, the plaintiff sustained injuries when he collided with the defendant's tractor-trailer. Federal regulations required the defendant's agent to make a written statement of the incident. Though litigation was evidently imminent, the Goosman court ruled that the report was not "work product." Id. at 52. National Union construed Goosman to mean that where regulations or other "non-litigation" responsibilities compel a party to produce "work product," that product is made "in the ordinary course of business, and does not receive work product immunity." National Union, 967 F.2d at 984.

RLI Ins. Co. v. Conseco, Inc., 477 F.Supp.2d 741, 747 (E.D.Va. 2007).

The evidence in the record offered by AVX to support its claim of work product protection over the documents at issue is insufficient to show that litigation was a real likelihood rather than a mere possibility. Also, the record fails to reveal the driving force behind the preparation of the documents at issue. See National Union, 967 F.2d at 984 ("Determining the driving force behind

the preparation of each requested document is . . . required in resolving a work product immunity question.").

In Bituminous Casualty Corp. v. Tonka Corp., 140 F.R.D. 381, 390 (D.Minn. 1992), the court held that documents created after the Minnesota Pollution Control Agency (MPCA) issued a Request for Initial Investigation were generated in anticipation of litigation and therefore protected pursuant to the work product doctrine. In 1981, as required by CERCLA, Tonka, the party requesting work product protection of documents, notified the Environmental Protection Agency (EPA) that its facility might be a possible hazardous waste site. Id. at 384. Thereafter, between 1982 and 1984, both Tonka and the MPCA conducted "extensive investigations" at the site and elevated levels of hazardous substances were discovered in June of 1984. Id. On February 5, 1985, the MPCA issued a Request for Initial Investigation by way of a letter to Tonka's lawyer, asking Tonka to take certain specified steps to assess the extent and the magnitude of the groundwater and soil contamination at the Tonka site. Id. The court found that documents created after February 5, 1985, were generated in anticipation of litigation. Id. at 390. The court further stated,

> Although litigation was always a prospect from the moment Tonka notified the EPA of the existence of the Tonka Main Site pursuant to CERCLA, before the MPCA issued its Request for Initial Investigation the prospect of litigation was too remote to enable the court to conclude that the documents at issue here were prepared or obtained because of the prospect for litigation.

Id.

In the instant case, AVX fails to present sufficient evidence to establish why it anticipated litigation. The declaration of Wyche states generally that "in environmental situations, there is the potential for claims when on-site environmental contamination is discovered as that is an event that reasonably could result in litigation." Wyche Supp. Decl. dated April 17, 2009 (Document # 74-6),

-27-

at ¶ 3.  The prospect of litigation arising out of the discovery of environmental contamination is, on its own, too remote to allow this court to conclude that the preparation of documents after the discovery of contamination was done in anticipation of litigation.

Further, the evidence in the record fails to show that the documents at issue would not have been prepared for any reason other than litigation.  Wyche's declaration states that the documents at issue were created "because of the potential for claims (among other reasons)."  Wyche Supp. Decl. dated April 17, 2009 (Document # 74-6), at ¶ 4.  It is clear from his declaration as well as a review of the documents themselves that the documents at issue were created for reasons other than just the potential for litigation.  Also, the record indicates that the existence of contamination was not made known to others for an extended period.  Under the facts presented in this case, AVX fails to meet its burden of showing that the work product protection applies to the documents at issue.

Again, the court can conceive of circumstances where a limited number of the documents created in the later years could be work product material.  However, such a finding would require the court to speculate as to the circumstances, an endeavor in which the court is not to engage.[13]

E.      Statutory Self-Evaluation Privilege

AVX also summarily claims that the documents at issue are protected by the statutory self-evaluation privilege.  AVX asserts that "the South Carolina Environmental Audit Privilege and Voluntary Disclosure Act [the Act], S.C. Code Ann. § 48-57-30(A), provides that internal environmental evaluations voluntarily undertaken by a facility" are privileged and immune from

_____

[13]Although waiver applies in the context of the work production doctrine as well, In re Doe, 662 F.2d 1073, 1079 (4th Cir.1981), the court need not address this issue in light of its finding that AVX has failed to meet its burden of establishing that the doctrine applies.  See footnote 11.

discovery. Motion for Protective Order (Document # 41) p. 7. However, the Act is not so broad in its protections. Specifically, it provides,

> (A) <u>An environmental audit report or any part of an environmental audit report </u>is privileged and, therefore, immune from discovery and is not admissible as evidence in a civil or administrative penalty action, except as provided in Sections 48-57-40 and 48-57-50. These documents are not entitled to the privilege:
>
>> (1) information obtained by observation by a regulatory agency;
>>
>> (2) information obtained from a source independent of the environmental audit;
>>
>> (3) documents, communication, data, reports, or other information required to be collected, maintained, otherwise made available, or reported to a regulatory agency or any other persons by statute, regulation, ordinance, permit, order, consent agreement, or as otherwise provided by law;
>>
>> (4) documents prepared either prior to the beginning of the environmental audit or subsequent to the completion date of the audit report, and in all cases, any documents prepared independent of the audit or audit report;
>>
>> (5) documents prepared as a result of multiple or continuous self-auditing conducted in an effort to intentionally avoid liability for violations;
>>
>> (6) information which is knowingly misrepresented or misstated or which is knowingly deleted or withheld from an environmental audit report, whether or not included in a subsequent environmental audit report;
>>
>> (7) information in instances where the material shows evidence of noncompliance with state, federal, regional, or local environmental laws, permits, consent agreements, regulations, ordinances, or orders and the owner or operator failed to either promptly take corrective action or eliminate any violation of law identified during the environmental audit within a reasonable period of time, but not exceeding three years after discovery of the noncompliance or violation unless a longer period of time is set forth in a schedule of compliance in an order issued by the department, after notice in the State Register and following the department's determination that acceptable progress is being made.

S.C. Code Ann. § 48-57-30(A) (emphasis added). Both "environmental audit" and "environmental

audit report" are defined by the Act. Importantly, "[a]n environmental audit must be a discrete activity with a specified beginning date and scheduled ending date reflecting the auditor's bona fide intended completion schedule." S.C. Code Ann. § 48-57-20(2). Furthermore, "'environmental audit report' means a document marked or identified as such with a completion date existing either individually or as a compilation prepared in connection with an environmental audit." S.C. Code Ann. § 48-57-20(3). As stated above, AVX argues generally that the documents at issue are all protected by all of the claimed privileges. AVX has not identified on its privilege log which privilege applies to each document. AVX has presented for <u>in camera</u> review approximately 2,500 pages of documents created over the course of approximately fifteen years. AVX has failed to meet its burden of showing the existence an of an environmental audit or audits or that the documents at issue fall within the definition of environmental audit report.[14] Accordingly, the court finds that the privilege provided in the Act does not apply to the documents at issue in this case.

F.    Insurance Documents

Three of the documents at issue are identified on the privilege log as being either to or from an "insurance company" (AVXRED000247-63; AVXRED01479-81; AVXRED01482-01507). For the same reasons discussed above, these three documents are not protected under either the attorney-

---

[14]The court notes that, in its privilege log, AVX labels several of the documents at issue as environmental audit reports. Nevertheless, even if AVX argues that the privilege set forth in the act applies only to these specific documents, it has failed to show that these documents fall within the definition of "environmental audit report" as set forth in the Act, whether they were prepared in connection with an "environmental audit" as defined in the Act, or to address whether these documents fall outside the exceptions to the privilege set forth in S.C. Code Ann. § 48-57-30(A)(1) - (7).

client privilege, the work product doctrine[15], or the statutory self-evaluation privilege. AVX also argues that these documents are protected from discovery based upon the existence of a fiduciary relationship between insurance carriers and an applicant. However, the cases cited by AVX do not support such a finding. The cases cited by AVX recognize a duty on the part of an insurer to protect the personal information of an applicant based upon contractual obligations or a fiduciary relationship. See Daly v. Metropolitan Life Ins. Co., 782 N.Y.S.2d 530 (N.Y.Sup. 2004); Robley v. Blue Cross/Blue Shield of Miss., 935 So.2d 1021, 1025 (Miss. App. 2005); Roberge v. Physicians Health Serv., 2002 WL 449528, at *2 (Conn. Super. Feb. 26, 2002). However, they do not address an insured disclosing the information through discovery in unrelated litigation. AVX fails to show that these cases are relevant to the issues before this court.

Also, AVX's reliance on Jason's Enterprises, Inc. v. General Acc. Ins. Co. of America, Nos. 95-2553, 95-2554, 1996 WL 346515 (4th Cir. June 25, 1996) is unpersuasive. As discussed in more detail above, AVX has fails to meet its burden of showing the documents at issue were created in anticipation of litigation. Thus, work product protection is not applicable.

AVX also cites to the Advisory Committee Notes accompanying the 1970 amendments to Rule 26, Fed.R.Civ.P., which state,

> For some purposes other than discovery, an application for insurance is treated as a part of the insurance agreement. The provision makes clear that, for discovery purposes, the application is not to be so treated. The insurance application may contain personal and financial information concerning the insured, discovery of

---

[15]AVX also asserts "the common interest doctrine" as a separate protection afforded communications with an insurance company. However, the common interest doctrine is merely an exception to the general rule under both the attorney client privilege and the work product doctrine that disclosure of otherwise-protected information to third-parties waives the protection. See In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990). It is not a separate protection.

which is beyond the purpose of this provision.

These Advisory Committee Notes refer to and limit the required disclosure under Rule 26(a)(1)(A)(iv) relating to potential insurance coverage. This note does not address documents or information sought in discovery outside of the required disclosures under Rule 26. Accordingly, AVX's reliance on this provision is misplaced and its claim of protection for the insurance documents is without merit.

## III.    CONCLUSION

For the reasons discussed above, AVX has failed to establish that the documents at issue should be protected from discovery. Accordingly, Plaintiff's Motion for Protective Order (Document # 109) is **DENIED**[16] and Defendant Horry Land Company's Motion to Compel (Document # 137) is **GRANTED**. AVX is ordered to produce to Horry Land Company in full, that is, in unredacted format, the documents it submitted for in camera review, as well as all the documents listed in category four on its privilege log–communications regarding law firm consultant invoices–within ten (10) days of the date of this order. The Clerk of Court is directed to file the privilege log submitted by AVX along with the documents for in camera review as an exhibit to this order.

**IT IS SO ORDERED**.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 24, 2010
Florence, South Carolina

---

[16]The court's ruling that the documents at issue are not protected renders moot the issues originally raised by AVX regarding the deposition questions to the AVX employees.